QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:    (650) 801-5100
claudestern@quinnemanuel.com
  Brian E. Mack (Bar No. 275086)
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700
brianmack@quinnemanuel.com

Attorneys for Plaintiff Mitek Systems, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mitek Systems, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> United Services Automobile Association, <br><br> Defendant. | Case No. 19-cv-07223-EMC <br><br> **PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING TRANSFER OF VENUE** <br><br> The Honorable Edward M. Chen <br><br> Hearing Date:   N/A <br> Time: <br> Courtroom: |

Plaintiff Mitek Systems, Inc. ("Mitek" or "Plaintiff"), hereby submits its "additional briefing on the following: (1) could Mitek have filed this lawsuit in the Southern District of California and (2) if so, should this case be transferred to the Southern District of California pursuant to 28 U.S.C. § 1404(a)?" as ordered by the Court on April 2, 2020.  Dkt. 40.

Venue would be proper in the Southern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant United Services Automobile Association ("USAA" or "Defendant") is subject to personal jurisdiction there and because, like in this District, "a substantial part of the events or omissions giving rise to the claim occurred" there. *Infra* Part I. However, although the Southern District of California was at all times a proper venue, Mitek respectfully submits that this case should not be transferred pursuant to 28 U.S.C. § 1404(a) because Mitek's decision to file this suit in the Northern District, also a proper forum, should under controlling precedent be afforded significant deference, and transfer to the Southern District is not compelled by the interests of convenience or judicial economy. *Infra* Part II.

## I. VENUE EXISTS IN THE SOUTHERN DISTRICT OF CALIFORNIA

Venue would be proper in the Southern District of California under both 28 U.S.C. §§ 1391(b)(1) and (2). As discussed in Mitek's previous supplemental brief, venue over an entity defendant is proper under 28 U.S.C. § 1391(b)(1) wherever the defendant is subject to personal jurisdiction. *See* Dkt. 38, at 6 (citing cases). USAA is subject to personal jurisdiction in California, and the Southern District specifically, because it purposefully took actions that it knew would cause harm to Mitek in San Diego, sent infringement letters to Mitek's customers in the Southern District, and subpoenaed Mitek to force it to participate in the Wells Fargo trial. *See Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 937 (N.D. Cal. 2017) (finding personal jurisdiction over defendant because it sent demand letters to forum and served court documents on the plaintiff in the forum).

Further, "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District. 28 U.S.C. § 1391(b)(2). "For declaratory judgment actions in [a] patent infringement case, section 1391(b)(2) refers to the district where the allegedly infringing actions took place." *Dex Prods., Inc. v. Houghteling*, 2006 WL 1751903, at *2 (N.D. Cal. June 23, 2006) (citing *U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir. 1982)). Mitek is headquartered the Southern District

and developed the allegedly infringing technology (*i.e.*, MiSnap) there.  Mitek's development and testing of MiSnap qualifies as a "substantial part," though far from all, of the allegedly infringing actions.  *See, e.g.*, *Election Sys. & Software, Inc. v. Avante Int'l Tech. Corp.*, 2008 WL 943338, at *3 (D. Neb. Apr. 7, 2008) (finding Nebraska to be one, but not the only, proper venue in action for declaratory judgment of noninfringement because allegedly infringing technology was developed there).  Further, USAA's prior supplemental brief concedes that it sent an enforcement letter to at least one Mitek customer in San Diego, creating a "reasonable apprehension of future liability."  Dkt. 39, at 2; *see SCVNGR, Inc. v. eCharge Licensing, LLC*, 2014 WL 4804738, at * 7 (D. Mass. Sep. 25, 2014) (finding Massachusetts to be one proper venue in action for declaratory judgment of noninfringement because "the correspondence that drove [Plaintiff] to file this lawsuit was received" there, and collecting supporting cases).

Therefore, the Southern District of California is one, but not the only, proper venue for this action.

## II. TRANSFER OF VENUE IS NOT WARRANTED

Under 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The movant must make "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

> A § 1404(a) motion to transfer requires a court to consider a variety of private and public interest factors, such as "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8)

the ease of access to sources of proof."
*Tech. Credit Corp. v. N.J. Christian Academy, Inc.*, 307 F. Supp. 3d 993, 1004 (N.D. Cal. 2018) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

As between the Northern and Southern District of California, each factor is either neutral or weighs against transfer.

**A. Location Where the Relevant Agreements Were Negotiated and Executed**

Mitek negotiated and executed several licensing agreements for MiSnap, including that with its integration partner, Ensenta, in the Northern District of California. Dkt. 24-1 ("Carnecchia Decl.") ¶¶ 7-8. These are all agreements that USAA considers infringing licenses and are likely to be among the most important documents in the case. USAA's agreement with its enforcement counsel, Epicenter Law, was also negotiated and executed in the Northern District of California. Compl., Ex. A, at 1 (Epicenter is located in "Burlingame, CA"); Dkt. 24-17, at 1 ("USAA taps California law firm to negotiate royalties with hundreds of banks"). USAA's actions taken as part of its widespread patent enforcement campaign using Bay Area patent enforcement counsel will be essential to many issues in the case, including notice, infringement, willfulness, and damages.[1]

Certainly, some relevant agreements were also executed in the Southern District, such as Mitek's licensing agreement with the San Diego bank to which USAA acknowledges it sent an enforcement letter. Dkt. 39, at 2. However, comparatively more, and more important, agreements (Mitek's with Ensenta and Wells Fargo, and USAA's with Epicenter) were executed here. Carnecchia Decl. ¶¶ 7-8.

Therefore, this factor weighs against transfer.

**B. Familiarity With Governing Law**

---

[1] At least *Georgia-Pacific* factors 1, 2, 3, 4 relate to the patentee's royalties received, licensing rates, and licensing campaign—topics on which USAA's selected Bay Area enforcement counsel will be the most knowledgeable witness. *See Ga.-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

The familiarity factor is neutral because both this Court and the Southern District of California "are familiar with patent law." *Trend Micro Inc. v. RPost Holdings, Inc.*, 2014 WL 1365491, at *10 n.9 (N.D. Cal. Apr. 7, 2014).

### C. Plaintiff's Choice of Forum

Under § 1404(a), where no forum-selection clause exists, "[t]he Court ***must*** also give some weight to the plaintiffs' choice of forum." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Tex.*, 571 U.S. 49, 62 n.6 (2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)) (emphasis added).  "A plaintiff's choice of venue is generally given ***substantial weight*** and a defendant normally 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 751 (N.D. Cal. May 11, 2015) (quoting *Decker*, 805 F.2d at 843) (emphasis added). This deference is especially heavy where, as here, the plaintiff's choice of forum is in "the plaintiff's home state." *Winter v. Am. Institute of Med. Scis. & Edu.*, 242 F. Supp. 3d 206, 216 (S.D.N.Y. 2017).

While Mitek acknowledges that the Southern District would also have been a proper forum for this case, it has good reason to believe that this District would be more convenient for both parties given the volume of evidence and potential witnesses located here.  That choice is entitled to "substantial weight." *Vasquez v. Wells Fargo Bank, Nat'l Assoc.*, 77 F. Supp. 3d 911, 924 (N.D. Cal. 2015) (citing *Fabius Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001)).  The reduced degree of deference that is sometimes accorded to a plaintiff's choice of venue does not apply here because it is not the case that Mitek "has presented no evidence of any contacts with this forum." *Cf. id.* at 925.  To the contrary, California is Mitek's home state. *See Winter*, 242 F. Supp. 3d at 216 ("[T]he plaintiff's choice of forum is given substantial deference especially if it is the plaintiff's home state.").  And Mitek conducts significant business in the Northern District specifically, including with its largest customer, Wells Fargo.  Carnecchia Decl. ¶¶ 7-9.

USAA must not be allowed to overstate the fact that Mitek chose the Northern District despite having its headquarters in the Southern District. Like USAA presumably believed when it sued Wells Fargo in the *Eastern* District of Texas despite having its headquarters in the *Western* District (Dkt. 24, at 22), Mitek believes this District is more convenient given all the circumstances, and this District is not inconveniently far for Mitek. That belief is not unreasonable considering the other convenience factors discussed herein.

**D. Respective Parties' Contacts with Forum**

Mitek is headquartered in, and conducts business with customers throughout, California. Compl. ¶¶ 8-9. Mitek licenses its technology to at least 13 financial institutions in the Northern District of California. Carnecchia Decl. ¶ 8. In particular, one of Mitek's most relevant (but certainly not only) customer is Wells Fargo, headquartered in San Francisco. Compl. ¶¶ 8-9.

USAA does not contest the allegations in Mitek's complaint demonstrating USAA's contacts with this District, such as the substantial revenue it derives from northern California residents, or that it conducts regular and systematic business with this forum. *Id.* ¶¶ 16-18. Nor does USAA contest that it invoked and purposefully availed itself to the jurisdiction of California courts and voluntarily submitted to jurisdiction in California on numerous occasions in the past. *Id.* ¶ 19. And USAA cannot dispute that its chosen patent enforcement counsel—the party USAA selected to conduct its widespread patent licensing and enforcement campaign targeting hundreds of Mitek customers—was and still is located in the Bay Area. *Id.* ¶¶ 8-9.

Notably, USAA did not move to dismiss for lack of personal jurisdiction. It thereby implicitly admits that it has sufficient contacts with California and with this District to be sued here. Therefore, this factor weighs heavily against transfer.

**E. Contacts Relating to Plaintiff's Cause of Action in Chosen Forum**

USAA does not contest Mitek's allegations concerning its enforcement campaign in Northern California, such as its use of Bay Area law firm Epicenter to

conduct the campaign, or that USAA sent enforcement letters and claim charts asserting the Patents-in-Suit to Mitek customers in the Northern District of California. *Id.* USAA's enforcement campaign also included in-person meetings relating to the Patents-in-Suit in this District. *Id.* ¶ 10.

Mitek's contacts with the Northern District relating to its cause of action are also significant. Mitek's integration partner, Ensenta, is headquartered in the Northern District. Carnecchia Decl. ¶ 7. Mitek licenses its technology to at least 13 financial institutions in the Northern District. *Id.* at ¶ 8. Therefore, this factor weighs against transfer.

### F. Differences in Cost of Litigation

According to the Federal Court Management Statistics published by the U.S. Courts website, this District and the Southern District have comparable numbers of filings per judge. Dkt. 24-20, at 66 (656 for Northern District), 69 (751 for Southern District). They also have a comparable median time from filing to trial in civil cases. *Id.* at 66 (22.8 months in Northern District), 69 (27.7 months in Southern District). Moreover, the Southern District is currently experiencing extended vacancies. *Id.* at 69 (S.D. Cal. has 55.1 "Vacant Judgeship Months"); *compare id.* at 66 (N.D. Cal. has 0 "Vacant Judgeship Months"). Therefore, in terms of docket congestion, this factor is neutral. *See Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) (holding that minor differences in docket congestion were "not so significant or stark that they should weigh on transfer").

### G. Availability of Compulsory Process

The Court may issue a subpoena to any person to command them to attend trial, hearing, or deposition. Fed. R. Civ. P. 45. While that power is limited to commanding appearance "within 100 miles of where the person resides," *id.* 45(c)(1)(A), the majority of non-party witnesses (such as those of Wells Fargo and Mitek's other Bay-Area partners and customers) reside in or near San Francisco. Carnecchia Decl. ¶¶ 7-8. While Mitek would comply with its discovery obligations in any case, it further

weighs against transfer that all relevant Mitek witnesses are subject to compulsory process here under Fed. R. Civ. P. 45(c)(1)(B).

In contrast, at least one critical witness would lie outside the subpoena power of the Southern District.  Epicenter PC head Ron Epstein, the orchestrator of USAA's patent enforcement campaign that triggered the present declaratory-judgment action, works and resides in the Bay Area and could be compelled to appear only by this Court.  Dkt. 24-22.  Mr. Epstein's prominence in USAA's aggressive patent enforcement campaign will be of central importance to many issues in this action, including Mitek's and its customers' potential notice of the Patents-in-Suit, infringement, willfulness, and damages.  Therefore, this factor weighs against transfer.

**H. Ease of Access to Sources of Proof**

Ease of access to sources of proof is "probably the single most important factor in a transfer analysis," *In re Google, Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (citation omitted).  It weighs heavily against transfer here.  The widespread nature of USAA's enforcement campaign means that relevant evidence may exist anywhere in the United States.  However, the Northern District of California is the operations center of that enforcement campaign—USAA hired Mr. Epstein, who resides in this District, to conduct the campaign. Dkts. 24-17, 24-22.  And numerous other third-party witnesses, such as those from Wells Fargo, Mitek's mobile deposit integration partners like Ensenta, and numerous banks using MiSnap, live and work in the Bay Area. Carnecchia Decl. ¶¶ 6-8.  All of those Northern California companies and witnesses possess relevant documentary evidence, such as licensing agreements, MiSnap integration documentation, and USAA's enforcement letters.

Therefore, this critical factor weighs strongly in favor of keeping this case here.

**III. CONCLUSION**

USAA has failed to make "a strong showing" of inconvenience to warrant upsetting Mitek's choice of forum.  The Court should therefore deny USAA's Motion, Dkt. No. 19, and should not transfer this action pursuant to 28 U.S.C. § 1404(a).

DATED: April 9, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By /s/ *Claude M. Stern*
 Claude M. Stern
 Brian E. Mack
 Attorneys for Plaintiff Mitek Systems, Inc.