1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   MITEK SYSTEMS, INC.,                    Case No. 19-cv-07223-EMC

8              Plaintiff,

9        v.                                 **ORDER GRANTING DEFENDANT'S
                                            MOTION TO TRANSFER; GRANTING
10  UNITED SERVICES AUTOMOBILE              DEFENDANT'S ADMINISTRATIVE
    ASSOCIATION,                            MOTION FOR LEAVE TO FILE
11                                          RESPONSE; AND OVERRULING
             Defendant.                     PLAINTIFF'S OBJECTION TO REPLY
12                                          EVIDENCE

13                                          Docket Nos. 19, 28, 30

14

15

16          The instant case is a patent declaratory judgment action.  Plaintiff Mitek Systems, Inc.

17  seeks a declaration that it does not infringe four patents (the '779, '517, '090, and '571 patents)

18  held by Defendant United States Automobile Association ("USAA").  Currently pending before

19  the Court is USAA's motion to dismiss for lack of subject matter jurisdiction – more specifically,

20  on the basis that there is no case or controversy between the parties.  In the alternative, USAA asks

21  the Court to transfer the instant case to the Eastern District of Texas, where USAA previously

22  filed a patent infringement lawsuit against Wells Fargo, one of Mitek's main customers.  That

23  lawsuit (Case No. C-18-0245 JRG (E.D. Tex.)) involved the same patents at issue here.  In

24  November 2019, a jury verdict issued in the Texas case in USAA's favor.

25          Having considered the parties' briefs and accompanying submissions, the Court finds the

26  matter suitable for disposition without oral argument.  The Court **GRANTS** USAA's motion to

27  transfer.  Because the Court is transferring the case, it does not rule on USAA's motion to dismiss

28  for lack of subject matter jurisdiction.  USAA can renew that motion before the Texas court.

United States District Court
Northern District of California

## I.     FACTUAL & PROCEDURAL BACKGROUND

The allegations in the complaint and the parties' evidence submitted in conjunction with the pending motion reflect as follows.[1]

"USAA is a reciprocal inter-insurance exchange" based in San Antonio, Texas.  Compl. ¶ 4.  It owns four patents – namely, the '779, '517, '090, and '571 patents.  *See* Compl. ¶ 1.  The patents are all related to mobile check deposit technology.

Mitek is a software company based in San Diego, California.  *See* Carnecchia Decl. ¶ 2; *see also* Compl. ¶ 3.  It has a product called Mobile Deposit® which provides a "mobile remote deposit capture solution for retail financial institutions and brokerages."  Carnecchia Decl. ¶ 2.  "More than 6,400 financial institutions have licensed [Mobile Deposit], including 99 of the top 100 banks in the United States."  Carnecchia Decl. ¶ 2.

Mitek also has a product called MiSnap™.  MiSnap concerns automatic image capture technology.  *See* Carnecchia Decl. ¶ 3; *see also* Compl. ¶¶ 3, 28 (alleging that MiSnap is "a remote image capture SDK [software development kit]" that enables "instant capture of quality images with a mobile or desktop device").  "Mitek partners with . . . financial service companies to help successfully integrate MiSnap™ into various financial institutions' mobile check deposit applications."  Carnecchia Decl. ¶ 7.  Mitek has licensed its MiSnap technology to various financial institutions, including but not limited to including Wells Fargo.  *See* Carnecchia Decl. ¶ 8.  The MiSnap technology is at issue in the instant case.

Starting in early 2017, USAA began to contact financial institutions regarding their mobile check deposit technology, indicating that their use of the technology violated USAA's patent rights.  *See* Compl. ¶ 8.  USAA did so through a law firm based in Burlingame, California (named Epicenter Law, PC).  USAA "sent over 1,000 patent licensing demand letters to financial institutions across the country, most of which are Mitek customers."  Compl. ¶ 8.  According to Mitek, after USAA sent out its patent licensing demand letters, Mitek received demands for

---

[1] Mitek has objected to evidence that USAA submitted in conjunction with its reply brief.  The Court grants USAA's motion to file a response to Mitek's objection.  The Court overrules Mitek's objection, as discussed below.

indemnification from its customers.  *See* Compl. ¶ 13.

One of Mitek's customers that received a demand letter from USAA was Wells Fargo.  *See* Compl. ¶ 9.  Furthermore, in June 2018, USAA took additional action against Wells Fargo, initiating a patent infringement suit against it in the Eastern District of Texas.[2]  In the complaint it filed in Texas, USAA referenced Mitek and its MiSnap technology.  For example, USSA alleged that:

- "[t]he claims of the patents in suit recite the essential elements of what the industry term[s] auto-capture";

- "[i]n 2014, Mitek published an article entitled 'Mitek MiSnap™ Mobile Auto Capture Improves Mobile Deposit® User Experience at Ten Leading Financial Institutions'"; and

- Mitek provides Wells Fargo with its capture control software.

Compl., Ex. B (Texas Compl. ¶¶ 29, 36).

Not only was Mitek implicated in the Texas complaint but it was also brought into the Texas litigation – *e.g.*, providing discovery as a third party.  *See, e.g.*, Compl. ¶ 12 (alleging that USAA "sought and received . . . documents and source code from Mitek and deposition testimony from several Mitek witnesses regarding the operation of MiSnap™"); Stern Decl., Ex. 2 (notice of subpoena, dated 5/16/2019, issued by USAA on Mitek in the Texas case).  Also, both USAA and Wells Fargo witnesses were asked and provided testimony about Mitek at trial.  *See generally* Opp'n at 4 (citing trial testimony).

Mitek did not initiate the current declaratory judgment action until after the jury trial had already begun in the Texas case.  In November 2019 – just a few days after Mitek filed the instant case – the jury in the Texas case reached a verdict in favor of USAA, awarding it $200 million.  *See* Glasser Decl., Ex. 6 (verdict form).

## II.    **DISCUSSION**

USAA has moved to dismiss for lack of subject matter jurisdiction and, in the alternative,

---

[2] According to Mitek, Wells Fargo is its only customer that USAA has sued as of date.  *See* Opp'n at 1.  Mitek characterizes the Texas case as a "bellwether lawsuit."  Opp'n at 1.

United States District Court
Northern District of California

for a transfer to the Eastern District of Texas.  Although USAA has moved to transfer in the alternative, the Court shall consider the transfer motion first because, if a transfer is in fact warranted, then the transferee court, and not this Court, should decide the merits of the motion to dismiss.

According to USAA, this Court should transfer this case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[3]  28 U.S.C. § 1404(a).  USAA contends that a transfer to the Eastern District of Texas is appropriate because that is where it sued Wells Fargo – one of Mitek's main customers – for patent infringement based on the same patents at issue here.

1.   <u>Whether Action Could Have Been Brought in the Eastern District of Texas</u>

In deciding whether to transfer, the Court must first determine whether Mitek could have filed the instant case in the Eastern District of Texas.  Whether the action could have been brought in the Eastern District of Texas turns on 28 U.S.C. § 1391, the venue statute.  Section 1391(b)(1)

---

[3] The Court notes that it asked the parties to provide supplemental briefing as to whether the Northern District of California is even a proper venue in the first place.  If not, then any transfer would need to be made pursuant to 28 U.S.C. § 1406(a) instead of § 1404(a).

Having reviewed the parties' supplemental briefs, the Court agrees with Mitek that USAA has waived any argument of improper venue.  The Court also notes that venue appears to be proper given that USAA did not contest that it is subject to personal jurisdiction in the Northern District of California.  *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in a judicial district in which the defendant resides, and a defendant's residence is defined in § 1391(c)(1) as a judicial district in which the defendant is subject to personal jurisdiction); *see also Ward v. Certain Underwriters at Lloyd's of London*, No. 18-cv-07551-JCS, 2019 U.S. Dist. LEXIS 79664, at *10-11 (N.D. Cal. May 10, 2019) ("[T]he Court has personal jurisdiction over Defendants based on waiver and consent, even if for no other reason.  As far as this Court is aware, every court to consider the issue has held that personal jurisdiction even based on waiver is sufficient to establish 'residency' for the purpose of § 1391(c)(2)."); *AT&T Corp. v. Teliax, Inc.*, No. 16-cv-01914-WHO, 2016 U.S. Dist. LEXIS 106515, at *5 (N.D. Cal. Aug. 11, 2016) ("[I]f an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under [28. U.S.C. § 1391].") (internal quotation marks omitted).

Because venue is proper under § 1391(b)(1), the Court does not address whether venue could also be proper under § 1392(b)(2).  *See* 28 U.S.C. § 1391(b)(2) (providing that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

1  provides that a civil action may be brought in "a judicial district in which any defendant resides."

2  28 U.S.C. § 1391(b)(1).

3       Here, Mitek argues that USAA cannot rely on § 1391(b)(1) to establish the Eastern District

4  of Texas as a viable forum because USAA resides in the Western District of Texas, and not the

5  Eastern District.  In response, USAA disputes that it resides only in the Western District of Texas,

6  where San Antonio is located.  USAA notes that an entity with the capacity to be sued (whether or

7  not incorporated) as a defendant is deemed to reside "in any judicial district in which [it] is subject

8  to the court's personal jurisdiction with respect to the civil action in question," 28 U.S.C. §

9  1391(c)(2); if a state has more than one judicial district, the "corporation shall be deemed to reside

10  in any district in that State within which its contacts would be sufficient to subject it to personal

11  jurisdiction if that district were a separate State."  *Id.* § 1391(d).  According to USAA, this means

12  that it can be sued not only in the Western District of Texas, but also the Eastern District.  USAA

13  has submitted a declaration from its Vice President for Distributed Infrastructure Services, which

14  states that:

15       • "USAA maintains eight offices throughout the State of Texas";

16       • "USAA's Chief Technology and Design Office is located in Plano, Texas," which

17        is based in the Eastern District;

18       • "USAA has operated out of its Plano campus since 2013";

19       • "[USAA's Plano campus has] over 800 USAA employees."

20  Parks Decl. ¶ 4-6 (also testifying that "USAA has a large IT infrastructure [that] operate[s] out of

21  its Plano, Texas office").  The above sufficiently establishes general jurisdiction in the Eastern

22  District.

23       In response, Mitek primarily objects to the Parks declaration because it was submitted for

24  the first time in reply.  But this objection does not have merit given that USAA did argue in its

25  motion that the instant lawsuit could have been brought in the Eastern District based on personal

26  jurisdiction, *see* Mot. at 15, and it does not appear to be any secret as to where USAA has offices.

27       Therefore, the instant action could have been brought in the Eastern District of Texas

28  pursuant to § 1391(b)(1).

United States District Court
Northern District of California

2.      Convenience of Parties and Witnesses and the Interests of Justice

Because the instant case could have been brought in the Eastern District, the Court now

considers whether the convenience of parties and witnesses, and the interests of justice, weigh in

favor of a transfer there.[4]

A district court has discretion in deciding whether to transfer.  *See Ventress v. Japan*

*Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's decision to change

venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the factors for and against

transfer involves subtle considerations and is best left to the discretion of the trial judge'").  In

making the decision on whether to transfer, a court may consider factors such as:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3)
> convenience of the witnesses, (4) ease of access to the evidence, (5)
> familiarity of each forum with the applicable law, (6) feasibility of
> consolidation with other claims, (7) any local interest in the
> controversy, and (8) the relative court congestion and time of trial in
> each forum.

*Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.).  The

party moving for transfer has the burden in showing that transfer is appropriate.  *See Commodity*

*Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *S.F. Residence Club, Inc.*

*v. Leader Bulso & Nolan, PLC*, No. C-13-0844 EMC, 2013 U.S. Dist. LEXIS 68600, at *22 (N.D.

Cal. May 14, 2013).

In the instant case, the critical factors are (1) plaintiff's choice of forum, (3) convenience

of the witnesses, and (6) feasibility of consolidation with other claims.  *Cf. Bryant Vineyards Ltd.*

*v. Ridenhour*, No. C-19-4363 EMC (N.D. Cal.) (Docket No. 45) (Order at 5) (focusing on these

factors).

As to the first factor,

> [t]he general rule is that a plaintiff's choice of forum is afforded
> substantial weight.  But, "the degree to which courts defer to the
> plaintiff's chosen venue is substantially reduced where the plaintiff
> does not reside in the venue or where the forum lacks a significant

---

[4] The Court also asked the parties to provide supplemental briefing on whether there could be a
transfer to the Southern District of California, which is where Mitek is based.  For the reasons
discussed below, the Court need not address this issue.

> connection to the activities alleged in the complaint."  If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

In the instant case, the Court accords little deference to Mitek's choice of forum precisely because Mitek does not reside in the Northern District of California and this District lacks a significant connection to the activities alleged in the complaint.  The parties' briefing makes clear that the dispute between the instant parties concerns whether Mitek indirectly infringes on USAA's patents.  Whether or not Mitek indirectly infringes will largely turn on its conduct in the Southern District of California where the company is based.  The fact that Mitek has some thirteen (13) customers in the Northern District of California is not enough to establish a significant connection to this District.  Mitek claims that more than 6,400 financial institutions have licensed its Mobile Deposit® technology.  *See* Carnecchia Decl. ¶ 2.  It appears from the Wells Fargo trial that, about 1,000 of these customers use the auto capture feature (*i.e.*, the MiSnap technology which is at issue in this case).  *See* Glasser Decl., Ex. 1 (Wells Fargo Trial Tr. at 4-5).  Out of these 1,000 customers who use MiSnap, only 13 are based in the Northern District of California. *See* Carnecchia Decl. ¶ 8.  Therefore, only about 1% (*i.e.*, 13 out of 1,000) are in the Northern District of California.  Mitek argues that one of its most significant customers is based in this District – *i.e.*, Wells Fargo.  But Mitek has specifically disavowed that this case involves Wells Fargo, *see, e.g.*, Opp'n at 13 (indicating that Mitek is not seeking a declaration that impacts customers already sued – *i.e.*, Wells Fargo), and, therefore, Mitek cannot claim that the instant case has a significant connection to this District based on its relationship with Wells Fargo.

Mitek contends still that the Northern District is a convenient forum because it "partners with other financial service companies to help successfully integrate MiSnap™ into various financial institutions' mobile check deposit applications" – and one such financial service company is Ensenta, which is based in Redwood City.  Carnecchia Decl. ¶ 7.  "Ensenta serves more than 1,100 financial institutions."  Carnecchia Decl. ¶ 7.  But the Carnecchia Declaration does little to show that Ensenta is a critical witness.  For example, there is no clear statement in the declaration that Ensenta was the main partner that Mitek used when it licensed MiSnap to 1,000

1    customers.  Also, it is not clear that Ensenta actually does anything of substance that would make

2    it a critical witness on the issue of infringement.

3          Finally, Mitek asserts that the Northern District is a convenient forum because USAA

4    hired counsel from Burlingame to send out the thousands of demand letters.  But here it is difficult

5    to see how USAA's counsel will be a critical witness.  According to Mitek, USAA's counsel "will

6    be essential to many issues in the case, including notice, infringement, willfulness, and damages,"

7    Pl.'s Supp. Br. at 3.  However, in this case, Mitek simply seeks a declaratory judgment of

8    noninfringement.  Willfulness and damages therefore are not at issue, at least in the absence of

9    USAA bringing a counterclaim for infringement (which it has not done as of yet).  As for notice,

10   the fact of the demand letters is not likely to be disputed, and, in any event, notice does not appear

11   to be an issue absent a counterclaim for infringement as well.  Finally, while USAA's counsel

12   could theoretically provide testimony on infringement, USAA itself would likely provide that

13   testimony, which would render counsel's testimony largely duplicative.  Advice of USAA's

14   counsel on infringement might also be privileged.  *Compare In re EchoStar Communs. Corp.*, 448

15   F.3d 1294, 1299 (Fed. Cir. 2006) (noting that, "[o]nce a party announces that it will rely on advice

16   of counsel, for example, *in response to an assertion of willful infringement*, the attorney-client

17   privilege is waived") (emphasis added); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1374

18   (Fed. Cir. 2007) ("hold[ing], as a general proposition, that asserting the advice of counsel defense

19   and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege

20   for communications with trial counsel").

21         Accordingly, for the reasons stated above, the Court accords little deference to Mitek's

22   choice of forum.  At best, the instant case has a weak connection to the Northern District, and the

23   lack of a significant connection indicates that Mitek's choice of this forum over, *e.g.*, its home

24   forum, smacks of forum shopping.

25         With respect to the third factor – convenience of the witnesses – it is largely neutral.

26   Based on the record submitted, the critical witnesses will be either Mitek witnesses (based on the

27   Southern District of California) or USAA witnesses (based in the Eastern and/or Western District

28   of Texas).  Although convenience of nonparty witnesses typically is deserving of more

United States District Court
Northern District of California

8

1    consideration than the convenience of party witnesses, there is no indication that there are critical

2    nonparty witnesses in this District.

3       Finally, the sixth factor – feasibility of consolidation with other claims – weighs strongly

4    in favor of transfer.  *Cf. Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03-3711

5    MHP, 2003 U.S. Dist. LEXIS 26802, at *13 n.3 (N.D. Cal. Oct. 14, 2003) (noting that "pendency

6    of an intimately related case in proposed transferee district remains a strong reason for transfer

7    even if it is improbable that cases would be consolidated due to more advanced status of the

8    pending case").  The Court recognizes that Mitek was not a party to the Wells Fargo litigation and

9    that, in the instant case, Mitek is asking for a judgment on indirect infringement with respect to

10   customers other than Wells Fargo.  However, the Wells Fargo litigation involved the same exact

11   patents at issue in the instant case and the issue of how Mitek's technology was used by a

12   customer accused of infringement was explored in the Eastern District of Texas.  Thus, even

13   though this case may not be formally consolidated, transfer will facilitate at the very least

14   coordination in that district.  *See id.* at *13.

15      The Court concludes that, based on the record before it, a transfer to the Eastern District of

16   Texas is appropriate.  In this regard, the Court notes that Mitek could have provided evidence

17   beyond that submitted in the Carnecchia Declaration to support a connection to this forum.  That

18   Mitek rested solely on this somewhat evasive declaration[5] further supports the Court's conclusion

19   that there is at best a weak connection to this District and that Mitek appears to have engaged in

20   forum shopping in filing here.

21   ///

22   ///

23   ///

24

25   [5] As noted above, the Carnecchia Declaration is evasive with respect to the role that Ensenta plays.
     Moreover, although Mr. Carnecchia notes in his declaration that there are thirteen (13) customers

26   who use MiSnap in the Northern District of California, he does not provide information as to
     where Mitek's other customers who use the technology are based.  In addition, his declaration

27   does not even clearly state that there are more customers in the Northern District as opposed to the
     Southern District where Mitek is based.  Mr. Carnecchia identifies California customers outside of

28   the Northern District but does not definitively say that this is a complete list of Mitek's California
     customers.

### III.   CONCLUSION

For the foregoing reasons, the motion to transfer is granted.

The Clerk of the Court is ordered to transfer the instant case to the Eastern District of Texas and close the file in this case.

This order disposes of Docket No. 19.


**IT IS SO ORDERED**.


Dated: April 21, 2020

_____
EDWARD M. CHEN
United States District Judge